Falkenburg, etc. v. Johnson, etc.

---

CASE 89—PETITION EQUITY—January 8.

# Falkenburg, Etc. v. Johnson, Etc.

APPEAL FROM RUSSELL CIRCUIT COURT.

1. JUDGMENT IN BAR—FEME-SOLE.—The fact that creditors of the husband were parties to a suit seeking to have his wife declared a *feme sole*, does not preclude them from afterwards attacking the validity of a transfer previously made to the wife by the husband.

2. PENSIONS—EXEMPTION.—Under the provisions of the Revised Statutes of the United States, Sec. 4747, a check for a pension is exempt in the hands of a pensioner, and being exempt in his hands, its transfer by him to his wife as her separate estate is no fraud as against his creditors and will be upheld; and the fact that the wife used the pension money in buying and having transferred to her a mortgage, did not authorize the creditors of the husband to subject the same to the payment of his debts.

3. WIFE'S SERVICES—FRAUD—VALUABLE CONSIDERATION.—Under the provision of the act of 1873 that the wages and compensation of married women for services and labor performed by her shall be free from the debts and control of her husband, money paid to her by the husband in consideration of extra services performed by her, to the extent of the value of such extra services, is supported by a valuable consideration and can not be subjected to the payment of his debts.

4. SAME.—A mortgage purchased by the wife of an insolvent debtor in part with the funds of her husband, may be subjected to the payment of the husband's debts, but the lien of the husband's creditors to the extent that the same was purchased with his money is only equal in dignity with that of the wife for the balance of the mortgage debt.

J. F. MONTGOMERY, FOR APPELLANTS.

1. The husband transferred the check which was nothing more nor less than an order for the money to his wife; the money never actually reached his hands or was paid to him; it was then exempt and its transfer to his wife could have been no fraud upon his creditors. Johnson v. Elkins, 90 Ky., 163. Simms v. Waltham, 9th Ky. Law·Rep., 912; Robinson v. Walker, 82 Ky., 60.

2. .The pensioner had the right under the circumstances of this case to secure this money to his wife as a reasonable provision for the support of her and the infant child.

J. E. HAYES, OF COUNSEL ON SAME SIDE.

N. H. W. AARON AND J. B. STONE, FOR APPELLEES.

1. Separate judgment creditors with return of *nulla bona* may unite in the same suit to subject a common fund to the payment of their debts. Bullitt v. Stewart, 3 B. M., 115; Waller v. Todd, 3 Dana, 503.

2. The exemption provided by sec. 4747 of the Revised Statutes of the United States does not continue after the pension money reaches the hands of the pensioner so as to enable him to dispose of the same in fraud of his creditors. Johnson v. Elkins, 90 Ky., 164; Robinson v. Walker, 82 Ky., 60; Hudspeth v. Harrison, 6 Ky. Law Rep., 304; Simms v. Waltham 9 Ky. Law Rep., 912.

3. The gift of the money to the wife was in violation of sections 1906 and 1907 of the Ky. Statutes, and void as to the existing creditors of her husband, and the note and mortgage bought therewith were liable to the husband's debts.

4. The evidence shows that the Humarson note and mortgage were bought and paid for by E. S. Falkenburg with his own money and assigned to his son, for the purpose of defrauding his creditors, and should be subjected to the payment of his debts.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

It appears from the record in this case that E. S. Falkenburg was a soldier in the late war, and that in 1892 he was

allowed a pension for his services as a soldier, and that a check therefor, amounting to something over $1,700, was sent to him, and that soon afterwards he transferred same to his wife, the appellant, A. A. Falkenburg, to be held by her as her separate estate, free from the control of her husband, or any husband she might have, and delivered same to her. It further appears that the Bank of Columbia held a note on F. E. Falkenburg, et al., and to indemnify the sureties of F. E. Falkenburg he executed a mortgage to them upon certain lands in Russell county, balance on which note amounted to something over $1,400, and that appellant, A. A. Falkenburg, purchased from said bank said note, either with the check aforesaid or the money arising therefrom, which note was assigned to her to be held as her separate estate.

On the 1st of January, 1894, the appellees, John Johnson, Simco Dockery and A. G. Hughes, instituted suit in the Russell Circuit Court against the appellants, in which it is alleged that the appellees had theretofore obtained separate judgments for sundry sums of money against E. S. Falkenburg, upon which executions had been returned no property found and in this suit alleged in substance that the transfer of said pension check was without consideration and fraudulent, and made with intent to cheat, hinder and delay plaintiffs in the collection of their claims, and claiming that the note and mortgage so purchased by the wife was in fact the property of the husband, and sought to have the debt adjudged to them and for the enforcement of the mortgage lien on the property described, and that same be applied to the payment of their several debts.

[35]

The substance of the defense is that the pension money was exempt from attachment or execution, and that E. S. Falkenburg had a legal right to dispose of it in such manner as he saw fit; that there was no intent to defraud, cheat, hinder or delay his creditors; that he and his wife were both old and frail, and that he had one infant daughter; that his wife had for years labored and toiled for the benefit of himself and family, during a part of which time he had a number of hands hired to work; that he had received some property by his marriage, and that long before he had received the pension check he had promised his wife in the event he ever did receive it that he would give it to her; and that it was no more than a just and proper provision for her support and that of their infant daughter, and that there was a good and valuable consideration for the assignment of the same, and that he had a legal right under the laws of the United States government to make such disposition of the check as he deemed proper.

. The court upon final hearing adjudged in favor of the appellees, and adjudged a sale of the mortgaged property for the payment of the debts pro rata of the said appellees, and from that judgment appellants prosecute this appeal.

It further appears from this record that F. E. Falkenburg did execute a mortgage upon a part of the same property to one Nancy Humerson for $500 or more, which note and mortgage had been assigned by her to J. B. Falkenburg. The appellees also allege that said note and mortgage had been paid off by E. S. Falkenburg, and the assignment procured to be made to J. B. Falkenburg for the purpose of cheating, hindering and delaying the creditors of E. S. Falk-

enburg. All of which was denied by appellants. Upon this issue the lower court found against the appellees, and from that judgment a cross appeal is prosecuted herein.

One of the questions involved in the original appeal is as to whether E. S. Falkenburg had a legal right to give the pension check to his wife. She was not then a feme sole, but it appears from this record that shortly afterward she was empowered to act and trade as a feme sole, and that these appellees were parties to the suit in which the power was conferred, and it seems made defense thereto. Appellants plead that suit as a bar to this action, but we are not inclined to hold that the former suit is a bar to this action.

The Revised Statutes of the United States provides that "No sum of money due or to become due to any pensioner shall be liable to attachment, levy or seizure by or under any legal process whatever while the same remains with the pension office, or any officer or agent thereof, or while same is in course of transmission to the pensioner entitled thereto, but shall enure wholly to the benefit of such pensioner."

It is manifest that the intention of the United States government was that the pension allowed to the pensioner should be absolutely free from attachment or any legal process by which it could be subjected to the debts of the pensioner, and that the pensioner should make any disposition of the same that he saw fit to make.

It is, however, insisted by appellees that this court has frequently decided that after the money was collected and invested in property that the property was subject to the debts of the pensioner, and that such decisions settle the right of appellees to subject the note in contest to the pay-

ment of their judgments, and cites in support of their contention the following cases: Johnson v. Elkins, 90 Ky., 164; Robinson v. Walker, 82 Ky., 604; Hudspeth v. Harrison, 6 Ky. Law Rep., 304; Simms v. Walsham, 9 Ky. Law Rep., 912.

It will be seen from an examination of the cases cited that they are based upon the ground that the collection of the pension money was in fact made by the pensioner or by his agent and under his direction, or that the investment or purchase of the property subjected was in fact made by him, and although the title might have been vested in others, yet it was in fact the property of the pensioner.

In the case at bar no such facts appear; but upon the contrary the check was delivered and assigned to the wife as her absolute separate property and possession delivered to her, and that she proceeded in her own right and name to purchase the note and mortgage in contest, and the same was assigned to her as her separate estate, and that such assignment was made in pursuance of a promise long before made to her, partly for the purpose of settlement upon her for her benefit and that of their infant daughter and partly on account of extra services and labor performed by the wife in cooking, etc., for the hired hands of the pensioner.

As early as 1873 the legislature of this State enacted the following statute: "That the wages and compensation of married women for services and labor done and performed by them shall be free from the debts and control of their husband, and their employers are allowed to pay such wages and compensation to such married women, and payment to them shall be a full discharge and acquittal of the employer."

It would seem that to the extent of the value of the labor performed by the wife that the property paid to her by the husband, even if liable to execution could not be seized after its delivery to the wife in payment of services rendered. From the proof in this case it is evident that the delivery of the check was not intended as a fraud upon the creditors, and can not be so held, nor can it be held to have been given without consideration.

Appellees also cite Kentucky Statutes, section 1906, etc., on the subject of gifts, assignments, etc., with the intent to hinder and delay creditors; and as to gifts, etc., without valuable consideration, which sections are the same as those in the General Statutes in force at the time of the transaction complained of.

. It was held in Cosby v. Ross, 3 J. J. Marshall, 290, that alienation of property not liable in law or equity to execution is not interdicted by the statute. In Lishy, &c. v. Perry, &c., 6 Bush, 515, it was held that a conveyance of an exempted homestead could not be set aside as fraudulent, not even when made with intent to prefer one creditor to the exclusion of other creditors. The court in discussing the question said: "Whatever, therefore, may have been his intention in making the conveyance to Clayton, it could not be said that any legal right of appellants was violated by the conveyance of property which was exempt from liability of sale for their debt."

The same principle was again announced in Fuqua v. Ferrell &c., 80 Ky., 71. It is a well-settled rule of law in this State that a creditor can not complain of any disposition which the debtor may make of property exempt from execu-

tion, and it matters not whether such disposition be made without consideration or with a fraudulent intent to cheat. hinder or delay creditors, yet no right accrues to the creditor to subject such property.

It is perfectly manifest that the check in the hands of the pensioner could not have been reached by any process of law, or in any manner subjected to the payment of appellee's claim; but was at the time, by a provision of the Revised Statutes of the United States, absolutely free from the claims of appellant's creditors, and he, therefore, had a right to dispose of it in such manner as to him seemed proper.

It results from the foregoing that the court erred in rendering the judgment in favor of appellees, appealed from by the appellants; that judgment is therefore reversed with directions to dismiss plaintiffs' petition so far as it attempts to subject the note or mortgage purchased by the appellant A. A. Falkenburg.

As to the Humerson mortgage sought to be subjected to the payment of plaintiff's claims, it seems to us, taking all the proof into consideration that we are authorized to conclude that E. S. Falkenburg paid for as much as $250 of that mortgage, and to that extent it should have been subjected to the payment of plaintiffs' claims. The judgment on the cross appeal is, therefore reversed to that extent, and the case is remanded with the further direction to the court below to adjudge to plaintiffs a lien on the property mentioned in the Humerson mortgage to the extent of $250, with interest from the 28th day of July, 1891, which lien, however, will be of equal dignity only with the lien secured for the balance of said note. The appellees must pay all the

costs in the court below, except the cost incident alone to the contest about the Humerson mortgage, and all the cos:s in this court.

Cause remanded for further proceedings consistent with this opinion.